## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

Fetch! Pet Care, Inc.,          )
                                 )
            Plaintiff,      )
                                 )
v.                             )      CIVIL ACTION NO.:
                                 )
Atomic Pawz Inc.; Britney Billings; )
Caerulean, LLC; Reva Campbell; Erik )
Donner; Dunson Ventures LLC; Corey Ellis; )
Sandy Ellis; Peter Fitch; Emira Gjurgjiali; )
Melinda Gladin; Steven Gladin; Jill )
Goldstein; KTM Services, LLC; Patrick )
Kuhnell; Kris Lamkin; Andy Lathrop; Jennie )
McFadden; John McFadden; Ian McPherson; )
Holly Merkel; Jeremiah Merkel; Meredith )
Pope; Georgette Silver; Angel Snyder; James )
Snyder; Heather Bailey Teter; TMB Pet Care, )
LLC; Under a Woof, LLC; Sandra Wang; and )
Worry Free Pet Services, Inc., )

            Defendants.

---

## COMPLAINT

---

Plaintiff Fetch! Pet Care, Inc. ("Fetch!") brings this action for breach of contract, trademark infringement, and misappropriation of trade secrets against Defendants Atomic Pawz Inc.; Britney Billings; Caerulean, LLC; Reva Campbell; Erik Donner; Dunson Ventures LLC; Corey Ellis; Sandy Ellis; Peter Fitch; Emira Gjurgjiali; Melinda Gladin; Steven Gladin; Jill Goldstein; KTM Services, LLC; Patrick Kuhnell; Kris Lamkin; Andy Lathrop; Jennie McFadden; John McFadden;

1

Ian McPherson; Holly Merkel; Jeremiah Merkel; Meredith Pope; Georgette Silver; Angel Snyder; James Snyder; Heather Bailey Teter; TMB Pet Care, LLC; Under a Woof, LLC; Sandra Wang; and Worry Free Pet Services, Inc. (collectively "Defendants").   Fetch! seeks a temporary restraining order, injunctive relief, monetary damages, and attorneys' fees and costs.

## PARTIES

1.     Plaintiff Fetch! is a corporation organized under California law with its principal place of business in Livonia, Michigan.

2.     Defendant Atomic Pawz Inc. is a corporation organized under Oklahoma law.

3.     On information and belief, Defendant Britney Billings is an individual residing in Bozeman, Montana.

4.     Defendant Caerulean, LLC is a limited liability company organized under Virginia law.

5.     On information and belief, Defendant Reva Campbell is an individual residing in Loveland, Ohio.

6.     On information and belief, Defendant Erik Donner is an individual residing in Des Moines, Iowa.

7.     Defendant Dunson Ventures LLC is a limited liability company organized under Texas law.

8.    On information and belief, Defendant Corey Ellis is an individual residing in Arcadia, California.

9.    On information and belief, Defendant Sandy Ellis is an individual residing in Arcadia, California.

10.    On information and belief, Defendant Peter Fitch is an individual residing in Lake Worth, Florida.

11.    On information and belief, Defendant Emira Gjurgjiali is an individual residing in Chicago, Illinois.

12.    On information and belief, Melinda Gladin (formerly Melinda Kennedy) is an individual residing in Middletown, Delaware.

13.    On information and belief, Steven Gladin is an individual residing in Middletown, Delaware.

14.    On information and belief, Defendant Jill Goldstein is an individual residing in Plantation, Florida.

15.    Defendant KTM Services, LLC is a limited liability company organized under Rhode Island law.

16.    On information and belief, Defendant Patrick Kuhnell is an individual residing in Longmont, Colorado.

17.    On information and belief, Defendant Kris Lamkin is an individual residing in Waconia, Minnesota.

18.     On information and belief, Defendant Andy Lathrop is an individual residing in Castle Rock, Colorado.

19.     On information and belief, Defendant Jennie McFadden is an individual residing in Grovetown, Georgia.

20.     On information and belief, Defendant John McFadden is an individual residing in Grovetown, Georgia.

21.     On information and belief, Defendant Ian McPherson is an individual residing in Des Moines, Iowa.

22.     On information and belief, Defendant Holly Merkel is an individual residing in Charlotte, North Carolina.

23.     On information and belief, Defendant Jeremiah Merkel is an individual residing in Charlotte, North Carolina.

24.     On information and belief, Defendant Meredith Pope is an individual residing in Columbia, South Carolina.

25.     On information and belief, Defendant Georgette Silver is an individual residing in San Jose, California.

26.     On information and belief, Defendant Angel Snyder is an individual residing in College Station, Texas.

27.     On information and belief, Defendant James Snyder is an individual residing in College Station, Texas.

28.     On information and belief, Defendant Heather Bailey Teter is an individual residing in Elizabethtown, Pennsylvania.

29.     Defendant TMB Pet Care, LLC is a limited liability company organized under Washington law.

30.     Defendant Under a Woof, LLC is a limited liability company organized under Illinois law.

31.     On information and belief, Defendant Sandra Wang is an individual residing in Charlottesville, Virginia.

32.     Defendant Worry Free Pet Services, Inc. is a corporation organized under Iowa law.

**JURISDICTION AND VENUE**

33.     This action arises under the Lanham Act, 15 U.S.C. § 1051, *et seq.*; the Defend Trade Secrets Act, 18 U.S.C. § 1831, *et seq.*; and Michigan and Ohio state law.  This Court's jurisdiction is based upon 15 U.S.C. § 1121, 18 U.S.C. § 1836, and 28 U.S.C. §§ 1331, 1338, and 1367.

34.     This Court has personal jurisdiction over the parties because they have extensive contacts and business dealings in Michigan, including through the business transactions alleged in this Complaint.  The parties have purposefully transacted business in Michigan, and Michigan transactions form the basis of Fetch!'s claims against Defendants.

35.     Venue is proper in this district under 28 U.S.C. § 1392(b)(2) because a substantial part of the events or omissions giving rise to this action have occurred and/or will occur in this district.

## ALLEGATIONS

36.     Fetch! is in the business of granting franchises to qualified individuals and entities to own and operate Fetch! pet care businesses.  Fetch! has developed a distinctive system for establishing and operating pet care services, including professional pet sitting, dog walking, and assisting with certain home care services (*e.g.,* securing mail and newspapers, watering plants) while pet owners are away. Qualified candidates enter into Franchise Agreements, which govern the relationships between Fetch! and franchisees.

37.     This case concerns Defendants' breaches of the Franchise Agreements, which prohibit them from operating businesses that compete with Fetch!; misappropriating Fetch!'s confidential, proprietary, and trade secrets information, which separately constitutes a violation of the Defend Trade Secrets Act, 18 U.S.C. § 1831, *et seq*.; and unlawfully using Fetch!'s trademarks, which separately constitutes a violation of Fetch!'s intellectual property rights under the Lanham Act, 15 U.S.C. § 1051, *et seq*.

38.   Defendants have not only commenced businesses that unlawfully compete with Fetch!, but have also engaged in concerted efforts to assist one another, as well as other franchisees, in exiting the Fetch! franchise.

39.   Defendants have formed an association, complete with bylaws, that the individual franchise members have used and are using to aid one another in their efforts to withdraw from the Fetch! franchise.

40.   Among other things, Defendants have conducted or participated in webinars teaching franchisees how to exit the Fetch! franchise and start competing businesses; prepared or circulated instructional videos similarly coaching franchisees about how to exit the Fetch! franchise and start competing businesses; and distributed template letters aimed at assisting departing franchisees in soliciting customers to abandon Fetch! for new, competing businesses.  Indeed, Defendants have used the Fetch! system, including e-mail accounts and Google drives, to house and disseminate these materials.

41.   The original template letter identified by Fetch! is dated April 25, 2025.

42.   The original instructional video identified by Fetch! is timestamped May 6, 2025.

43.   In addition, in several instances, Defendants have incorporated Fetch!'s proprietary trademarks into websites or other online materials promoting their competing businesses.

44.     Defendants have also inappropriately misappropriated Fetch!'s confidential information, including without limitation and to varying degrees, its client lists, marketing information, website design and formatting, accounting information, business processes and procedures, and operations manuals.

45.     Each Defendant entered into and assented to one or more Franchise Agreements with Fetch!.  Specifically:

a.      Defendant Atomic Pawz Inc. assented to and entered a Franchise Agreement with Fetch! on May 25, 2021.

b.      Defendant Britney Billings assented to and entered a Franchise Agreement with Fetch! on April 27, 2022.

c.      Defendant Caerulean, LLC assented to and entered a Franchise Agreement with Fetch! on May 24, 2021.

d.      Defendant Reva Campbell assented to and entered a Franchise Agreement with Fetch! on September 7, 2021.

e.      Defendants Erik Donner and Ian McPherson assented to and entered a Franchise Agreement with Fetch! on April 10, 2024.

f.      Defendant Dunson Ventures LLC assented to and entered two Franchise Agreements with Fetch! on October 27, 2021.

g.      Defendants Corey Ellis and Sandy Ellis assented to and entered a Franchise Agreement with Fetch! on March 22, 2021.

h.      Defendant Always There Concierge Pet Care, LLC assented to and entered two Franchise Agreements with Fetch! on September 28, 2023 and third on December 5, 2023.

i.      Defendant Emira Gjurgjiali assented to and entered a Franchise Agreement with Fetch! on April 6, 2023.

j.      Defendants Melinda Gladin and Steven Gladin assented to and entered a Franchise Agreement with Fetch! on August 20, 2020.

k.      Defendant Jill Goldstein assented to and entered Franchise Agreements with Fetch! on March 4, 2019 and April 30, 2024.

l.      Defendant KTM Services, LLC assented to and entered two Franchise Agreements with Fetch! on March 30, 2022.

m.      Defendant Patrick Kuhnell assented to and entered two Franchise Agreements with Fetch! on July 7, 2021.

n.      Defendant Kris Lamkin assented to and entered three Franchise Agreements with Fetch! on May 27, 2021.

o.      Defendant Andy Lathrop assented to and entered a Franchise Agreement with Fetch! on May 27, 2021.

p.      Defendants Jennie McFadden and John McFadden assented to and entered a Franchise Agreement with Fetch! on May 24, 2021.

q.      Defendants Holly Merkel and Jeremiah Merkel assented to and entered two Franchise Agreements with Fetch! on November 19, 2021.

r.      Defendant Meredith Pope assented to and entered a Franchise Agreement with Fetch! on May 25, 2021.

s.      Defendant Georgette Silver assented to and entered a Franchise Agreement with Fetch! on April 15, 2023.

t.      Defendants Angel Snyder and James Snyder assented to and entered a Franchise Agreement with Fetch! on February 11, 2022.

u.      Defendant Heather Bailey Teter assented to and entered a Franchise Agreement with Fetch! on March 24, 2023.

v.      Defendant TMB Pet Care, LLC assented to and entered a Franchise Agreement with Fetch! on August 8, 2017.

w.      Defendant Under a Woof, LLC assented to and entered a Franchise Agreement with Fetch! on December 17, 2017.

x.      Defendant Sandra Wang assented to and entered a Franchise Agreement with Fetch! on March 30, 2022.

y.      Defendant Worry Free Pet Services, Inc. assented to and entered a Franchise Agreement with Fetch! on September 8, 2017.

46.    The Franchise Agreements detail the procedures, methodologies, standards, requirements, and obligations for franchisees, including Defendants, to operate their Fetch! franchises.

47.    The Franchise Agreements are for specified terms (typically ten years) and require Defendants to pay Fetch! fees and royalties in exchange for access to and use of Fetch!'s proprietary procedures, methodologies, standards, and protected marks and branding.

48.    The Franchise Agreements each contain a choice of law provision (Section XXIV.  APPLICABLE LAW) identifying either Michigan law (the "Michigan Franchise Agreement") or Ohio law (the "Ohio Franchise Agreement"). Specifically:

    a.    The following Defendants executed a Michigan Franchise Agreement:  Britney Billings; Reva Campbell; Erik Donner; Dunson Ventures LLC; Peter Fitch; Emira Gjurgjiali; Jill Goldstein; KTM Services, LLC; Patrick Kuhnell; Ian McPherson; Holly Merkel; Jeremiah Merkel; Georgette Silver; Angel Snyder; James Snyder; Heather Bailey Teter; and Sandra Wang. By way of example, a true and correct copy of the Michigan Franchise Agreement is attached as **Exhibit A**.

    b.    The following Defendants executed an Ohio Franchise Agreement:  Atomic Pawz Inc.; Caerulean, LLC; Corey Ellis; Sandy Ellis;

Melinda Gladin; Steven Gladin; Kris Lamkin; Andy Lathrop; Jennie McFadden; John McFadden; Meredith Pope; TMB Pet Care, LLC; Under a Woof, LLC; and Worry Free Pet Services, Inc.  By way of example, a true and correct copy of the Ohio Franchise Agreement is attached as **Exhibit B**.

49.    Among other things, Franchisees contract for access to proprietary Fetch! branding and business procedures.

50.    Fetch! is the owner of proprietary marks included the company's trade names, service marks, trademarks, logos, and other commercial symbols that it licenses to franchisees for use in their businesses.

51.    Fetch!'s proprietary marks specifically include the following registered trademarks, which the company uses in interstate commerce:

| Trademark | Registration Number | Registration Date |
|---|---|---|
| Fetch! | 2820746 | March 9, 2004 |
| Make Fetch! Happen | 5858334 | September 10, 2019 |
|  | 6034923 | April 14, 2020 |

| | 6034924 | April 14, 2020 |
|---|---|---|
|  | | |

52.    Fetch!'s proprietary marks also specifically include the following trademarks that are in the process of being registered with the U.S. Patent and Trademark Office, and which Fetch! has been using in interstate commerce in association with the services for which Fetch! offers franchises:

| Trademark | Application Number | Filing Date |
|---|---|---|
| WE'VE GOT YOUR TAIL COVERED | 98795278 | October 10, 2024 |
|  | 98795405 | October 10, 2024 |

53.    The Franchise Agreements also include covenants not to compete (*see* Section XVI. COVENANTS in both the Michigan Franchise Agreement and the Ohio Franchise Agreement).

54.    The Michigan Franchise Agreement contains the following non-compete provisions at Sections XVI.B and XVI.C:

B.      Franchisee specifically acknowledges that, pursuant to this Agreement, Franchisee will receive valuable specialized training and confidential information, including, without limitation, information regarding the operational, sales, promotional and marketing methods and techniques of Franchisor and the System. Franchisee covenants that, during the term of this Agreement, and for a continuous uninterrupted period commencing upon the expiration, termination, transfer or assignment of this Agreement, regardless of the cause for termination, and continuing for two (2) years thereafter, Franchisee shall not, except as otherwise approved in writing by Franchisor, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, or legal entity:

1.      Divert or attempt to divert any business or client of the Franchise to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with Franchisor's Proprietary Marks and the System, including, but not limited to, any effort or attempt to create a service or System that would compete with any of the Franchisor's services offered to new or existing franchisees such as the Sales & Marketing Center.

2.      Employ or contract with, or seek to employ or contract with any officer, director, or other personnel of Franchisor or developer of Franchisor, or otherwise directly or indirectly induce such person to leave his or her employment or terminate his contract.

C.      Franchisee covenants that Franchisee shall not, except as otherwise approved in writing by Franchisor, during the term of this Agreement and for a continuous uninterrupted period commencing upon the expiration, termination (regardless of the cause for termination), transfer or assignment of this Agreement, and continuing for two (2) years thereafter, either directly or indirectly for itself, or through, on behalf of, or in conjunction with any person, persons, or legal entity, own, maintain, operate, engage in, be employed by, or have any interest in any business which provides in home pet or home care and any other related services the Franchisor offers similar in scope to the services offered under the System and Proprietary Marks and which is, or is intended to be, operated within the Target Area or within a radius of twenty-five (25) miles around the Target Area or within a radius of twenty-five (25) miles around the Target Area of any other franchisee.

55.      The Ohio Franchise Agreement contains the following, nearly identical, non-compete provisions at Sections XVI.B and XVI.C:

-14-

B.    Franchisee specifically acknowledges that, pursuant to this Agreement, Franchisee will receive valuable specialized training and confidential information, including, without limitation, information regarding the operational, sales, promotional and marketing methods and techniques of Franchisor and the System. Franchisee covenants that, during the term of this Agreement, and for a continuous uninterrupted period commencing upon the expiration, termination, transfer or assignment of this Agreement, regardless of the cause for termination, and continuing for two (2) years thereafter, Franchisee shall not, except as otherwise approved in writing by Franchisor, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, or legal entity:

1.    Divert or attempt to divert any business or client of the Franchise to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with Franchisor's Proprietary Marks and the System.

2.    Employ or contract with, or seek to employ or contract with any officer, director, associate, or other personnel of Franchisor, or developer of Franchisor, or otherwise directly or indirectly induce such person to leave his or her employment or terminate his contract.

C.    Franchisee covenants that Franchisee shall not, except as otherwise approved in writing by Franchisor, during the term of this Agreement and for a continuous uninterrupted period commencing upon the expiration, termination (regardless of the cause for termination), transfer or assignment of this Agreement, and continuing for two (2) years thereafter, either directly or indirectly for itself, or through, on behalf of, or in conjunction with any person, persons, or legal entity, own, maintain, operate, engage in, be employed by, or have any interest in any business which provides in-home pet or home care and any other related services the Franchisor offers similar in scope to the services offered under the System and Proprietary Marks and which is, or is intended to be, operated within the Protected Territory or within a radius of twenty-five (25) miles around the Protected Territory or within a radius of twenty-five (25) miles around the Protected Territory of any other franchisee.

56.    Despite assenting to these non-compete provisions, Defendants are operating pet care business that are competing with Fetch! in violation of their Franchise Agreements.  Specifically, on information and belief:

a.    The owner of Defendant Atomic Pawz Inc., Donna Green, is now operating a pet care business ("Pawz and Pet Play Care North OKC") that has a registered tradename with the Oklahoma Secretary of State and is competing with Fetch! in violation of Atomic Pawz Inc.'s Franchise Agreement.

b.    Defendant Britney Billings is now operating a pet care business ("Doodle and Friends Pet Care") that has a registered assumed business name

with the Montana Secretary of State and is competing with Fetch! in violation of Ms. Billings' Franchise Agreement.

c.     Defendant Caerulean, LLC is now operating a pet care business ("Pet Care Club of Loudoun") that is competing with Fetch! in violation of Caerulean, LLC's Franchise Agreement.

d.     Defendant Reva Campbell is now operating a pet care business ("Reva's Pet Care, LLC") that is competing with Fetch! in violation of Ms. Campbell's Franchise Agreement.

e.     Defendants Erik Donner and Ian McPherson are now operating a pet care business ("DSM Pet Care Club") that is registered with the Iowa Secretary of State (under the legal name "Withakay Walkers LLC" and fictitious names "Ames Pet Care Club," "DSM Pet Care Club," "Pet Care Club," and "WDM Pet Care Club") and is competing with Fetch! in violation of their Franchise Agreement.

f.     Defendant Dunson Ventures LLC is now operating a pet care business ("Georgie's Pet Care") that is competing with Fetch! in violation of Dunson Ventures' Franchise Agreement.

g.     Defendants Corey Ellis and Sandy Ellis are now operating a pet care business ("Pet Care Club of the Foothills") that is competing with Fetch! in violation of the Ellis's Franchise Agreement.

h.      Defendant Peter Fitch is now operating a pet care business ("Pet Care With Love, LLC") that is registered with the Florida Secretary of State and is competing with Fetch! in violation of Mr. Fitch's Franchise Agreement.

i.      Defendant Emira Gjurgjiali is now operating a pet care business ("Alby Pet Care, Inc.") that is registered with the Illinois Secretary of State and is competing with Fetch! in violation of Ms. Gjurgjiali's Franchise Agreement.

j.      Defendants Melinda Gladin and Steven Gladin are now operating a pet care business ("Walkers Pet Care") that is competing with Fetch! in violation of the Gladins' Franchise Agreement.

k.      Defendant Jill Goldstein is now operating a pet care business ("Pet Care Club of Broward") that is competing with Fetch! in violation of Ms. Goldstein's Franchise Agreement.

l.      Defendant KTM Services, LLC is now operating a pet care business ("Pet Care Club of Rhode Island") that is registered with the Rhode Island Secretary of State and–is competing with Fetch! in violation of KTM Services' Franchise Agreement.

m.      Defendant Patrick Kuhnell is now operating a pet care business ("ASAP Enterprises of Northern Colorado LLC" d/b/a "Twin Peaks Pet

Care") that is registered with the Colorado Secretary of State and is competing with Fetch! in violation of Mr. Kuhnell's Franchise Agreement.

n.  Defendant Kris Lamkin is now operating a pet care business ("West Metro Pet Care Inc.") that is registered with the Minnesota Secretary of State and is competing with Fetch! in violation of Ms. Lamkin's Franchise Agreement.

o.  Defendant Andy Lathrop is now operating a pet care business (Lathrop Pro Pet Care LLC" d/b/a "Pet Care Club of Douglas County") that is registered with the Colorado Secretary of State and is competing with Fetch! in violation of Mr. Lathrop's Franchise Agreement.

p.  Defendants Jennie McFadden and John McFadden are now operating a pet care business ("Pet Care Club of Greater Augusta") that is competing with Fetch! in violation of the McFaddens' Franchise Agreement.

q.  Defendants Holly Merkel and Jeremiah Merkel are now operating a pet care business ("HJM Partnership Inc.") that is registered with the North Carolina Secretary of State and is competing with Fetch! in violation of the Merkels' Franchise Agreement.

r.  Defendant Meredith Pope is now operating a pet care business ("Pope, Paws & Petals, Inc.") that is registered with the South Carolina

Secretary of State and is competing with Fetch! in violation of Ms. Pope's Franchise Agreement.

s.    Defendant Georgette Silver is now operating a pet care business ("Wagster Pet Care") that is competing with Fetch! in violation of Ms. Silver's Franchise Agreement.

t.    Defendants Angel Snyder and James Snyder are now operating a pet care business ("B/CS Pet Care Club") that is competing with Fetch! in violation of the Snyders' Franchise Agreement.

u.    Defendant Heather Bailey Teter is now operating a pet care business ("The Pet Care Club of Central PA") that is competing with Fetch! in violation of Ms. Teter's Franchise Agreement.

v.    Defendant TMB Pet Care, LLC is now operating a pet care business ("The Pet Care Club of Seattle / Pet Care Club, Inc.") that is competing with Fetch! in violation of TMB Pet Care's Franchise Agreement.

w.    Defendant Under a Woof, LLC is now operating a pet care business ("Always With Love Pet Care") that is registered as an assumed name with the Illinois Secretary of State and is competing with Fetch! in violation of Under a Woof's Franchise Agreement.

x.    Defendant Sandra Wang is operating a pet care business ("Virginia Concierge, LLC d/b/a Charlottesville Pet Concierge") that is

registered with the Virginia Secretary of State and is competing with Fetch! in violation of Ms. Wang's Franchise Agreement.

       y.    Defendant Worry Free Pet Services, Inc. is now operating a pet care business ("Worry Free Pet Care") that is competing with Fetch! in violation of Worry Free Pet Service's Franchise Agreement.

57.    Further, on March 24, 2025, Defendants, through their counsel, registered "The Pet Care Club" with the Delaware Secretary of State.

58.    Section XVI.H of both the Ohio and Michigan Franchise Agreements contains the following provision acknowledging that violation of the non-compete covenants constitutes irreparable injury and consenting to Fetch!'s application for an injunction prohibiting such conduct.

    H.    Franchisee acknowledges that Franchisee's violation of the terms of this Section XVI. would result in irreparable injury to Franchisor for which no adequate remedy at law may be available, and Franchisee accordingly consents to Franchisor's application for an injunction prohibiting any conduct by Franchisee in violation of the terms of this Section XVI.

59.    Section XVI.G of both the Ohio and Michigan Franchise Agreements expressly provides for reasonable attorneys' fees incurred in enforcing the non-compete covenants:

    G.    Franchisee expressly agrees that the existence of any claims it may have against Franchisor, whether or not arising from this Agreement, shall not constitute a defense to the enforcement by Franchisor of the covenants in this Section XVI. Franchisee agrees to pay all costs and expenses (including reasonable attorney's fees) incurred by Franchisor in connection with the enforcement of this Section XVI.

60.     The Franchise Agreements also expressly prohibit franchisees from disclosing, misappropriating, or improperly using Fetch!'s confidential information.

61.     Section IX of the Michigan Franchise Agreement and Ohio Franchise Agreement provides:

IX.     CONFIDENTIAL INFORMATION

    A.     <u>Definition</u>

Any and all information, knowledge, know how, and techniques which Franchisor designated as confidential shall be deemed confidential for purposes of this Agreement, except:

    1.  Information which Franchisee can demonstrate came to its attention prior to disclosure thereof by Franchisor; or

    2.  Information which, at or after the time of disclosure by Franchisor to Franchisee, had become or later becomes a part of the public domain, through publication or communication by others.

    B.     <u>Prohibition</u>

Franchisee shall not, during the term of this Agreement or thereafter, communicate, divulge, or use for the benefit of any other person, persons or Legal Entity any confidential information, knowledge, or know how concerning the methods of operation of the Franchise which may be communicated to Franchisee or of which Franchisee may be apprised by virtue of Franchisee's operation under the terms of this Agreement.

    C.     <u>Transmittal to Assistants</u>

Franchisee shall divulge such confidential information only to such of its assistants as must have access to it in order to operate the Franchise. Further, Franchisee shall require its assistants and all other personnel having access to any confidential information from Franchisor to execute an agreement in a form prescribed by Franchisor that they will maintain the confidentiality of information they receive in connection with their employment by Franchisee at the Franchise and

-21-

that includes the non-competition covenants as set forth in Section XVI.C below. Such covenants shall be in a form satisfactory to Franchisor, including, without limitation, specific identification of Franchisor as a third party beneficiary of such covenants with the independent right to enforce them.

62.   Despite this confidentiality provision, Defendants have inappropriately misappropriated Fetch!'s confidential information and used it in establishing and operating their competing businesses.

63.   Section IX.D of both the Ohio and Michigan Franchise Agreements expressly acknowledges of that a violation of the Agreements' provision on confidential information will cause Fetch! irreparable injury and provides for reasonable attorneys' fees and costs incurred in seeking injunctive or other relief to enforce Fetch!'s rights.

D.   <u>Consequences of Breach</u>

Franchisee acknowledges that any failure to comply with the requirements of this Section IX. will cause Franchisor irreparable injury, and Franchisee agrees to pay all court costs and reasonable attorney's fees incurred by Franchisor in obtaining specific performance of, or an injunction against, violation of the requirements of this Section IX. Franchisee understands that an individual shall not be held criminally liable or civilly liable under any United States federal or state trade secret law for the disclosure of a trade secret that: (1) is made (a) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney, and (b) solely for the purpose of reporting or investigating a suspected violation of law; or (2) made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. Disclosures to attorneys, made under seal, or pursuant to court order are also protected in certain circumstances under 18 U.S.C. § 1833.

64.   Fetch!'s efforts to protect its proprietary information have been met with concerning opposition.  For example, on May 17, 2025, a Fetch! employee

received five anonymous and menacing voicemail messages, each from a different telephone number, after Fetch! discovered, via a review of activity logs, that franchisees were downloading proprietary customer lists through Fetch!'s scheduling software and sought to halt that activity.  Some of the messages were particularly threatening, saying things such as:

        a.     "We're coming for you . . . Better watch your back."

        b.     "We'll take you down and everyone you know."

        c.     " . . . you all better watch out.  You don't know who you f███d with."  (Redacted).

65.    Further, in violation of their Franchise Agreements, several Defendants unilaterally ceased paying royalties.

66.    At all relevant times, Fetch! has complied with and timely discharged its contractual obligations under the Franchise Agreements.

67.    On May 16, 2025, only after discovering that Defendants were in material breach of their Fetch! Franchise Agreements and were each attempting to misappropriate Fetch!'s customer lists and other data, Fetch! terminated Defendants from the Fetch! system.

68.    Fetch! is seeking injunctive and other provisional relief.  This dispute is accordingly excepted from the arbitration clauses in Defendants' Franchise Agreements.

## COUNT I
## BREACH OF CONTRACT
### (All Defendants)

69.    Fetch! hereby adopts and realleges by reference the allegations contained in each and every foregoing paragraph, as if fully set forth herein.

70.    Fetch! and Defendants executed the Franchise Agreements.

71.    The Franchise Agreements are legal and enforceable contracts.

72.    Defendants breached the Franchise Agreements by forming competing businesses in direct violation of Section XVI; continuing in direct violation of Section XVI to use Fetch!'s federally registered marks in connection with advertising and promoting their competing businesses; and misappropriating and inappropriately using Fetch!'s confidential information, including but not limited to customer lists and trade secrets, in direct violation of Section IX.

73.    Defendants' breaches of the Franchise Agreements directly and proximately caused Fetch! significant and immediate irreparable harm by the loss of customers, damage to reputation, dilution of its proprietary marks, and actual damages, plus additional interest and attorneys' fees and costs that may accrue throughout this action.

74.    As per the plain language of Section XVI.H of their Franchise Agreements, Defendants have explicitly consented to "Franchisor's application for

an injunction prohibiting any conduct by Franchisee in violation of the terms of this Section XVI."

75.   As per the plain language of Section IX.D. of their Franchise Agreements, Defendants have acknowledged that failure to comply with the requirements of Section IX "will cause Franchisor irreparable injury."

76.   Fetch! is also entitled to legal and equitable relief on the merits of its claims for breach of contract, requiring Defendants to cease operating their competing business and cease use of Fetch!'s federally registered marks and confidential information in connection with their competing businesses.

## COUNT II
## FEDERAL TRADEMARK INFRINGEMENT
### (All Defendants)

77.   Fetch! hereby adopts and realleges by reference the allegations contained in each and every foregoing paragraph, as if fully set forth herein.

78.   Defendants' infringing uses of Fetch!'s federally-registered marks are likely to deceive or confuse the public into believing, contrary to fact, that Defendants' competing business operations are licensed, franchised, sponsored, authorized, or otherwise approved by Fetch!, or are in some other way connected to, associated with, or affiliated with Fetch!.  These unlicensed uses infringe Fetch!'s exclusive rights in its marks under § 32 of the Lanham Act, 15 U.S.C. § 1114.

79.    Defendants' acts were done and are being done willfully, knowingly, and intentionally to cause confusion or mistake or to deceive and to damage Fetch! and its authorized franchisees.

## COUNT III
## MISAPPROPRIATION OF TRADE SECRETS
## (All Defendants)

80.    Fetch! hereby adopts and realleges by reference the allegations contained in each and every foregoing paragraph, as if fully set forth herein.

81.    Defendants had access to Fetch!'s confidential and proprietary information, including without limitation client lists, marketing information, website design and formatting, accounting information, business processes and procedures, and operations manuals, all of which constitute trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq*.

82.    Fetch!'s confidential, proprietary, and/or trade secret information derived independent economic value, actual or potential, from not being generally known to others, and not being readily ascertainable through proper means by others, who could obtain economic value from disclosure or use of the information.

83.    Fetch! actively pursued reasonable measures to maintain the secrecy of its confidential, proprietary, and/or trade secret information.

84.    Defendants knowingly, willfully, and maliciously misappropriated Fetch!'s confidential, proprietary, and/or trade secret information, without express

or implied consent, to assist themselves in furthering their own businesses in direct competition with Fetch!, as well as to similarly assist one another and other franchisees to sever ties with Fetch! and compete against it.

85.    Defendants' conduct has directly and proximately caused, and will continue to cause, Fetch! to suffer damages and other irreparable harm.

**WHEREFORE**, Fetch! prays for the following relief:

(a)    Entry of a temporary restraining order and preliminary injunction enjoining Defendants from (i) participating in competitive businesses during the term and in the locations proscribed by their Franchise Agreements; (ii) using and infringing upon Fetch!'s federally-registered marks; and (iii) using, disclosing, or transmitting for any purposes Fetch!'s confidential, proprietary, and trade secret information, plus reasonable attorneys' fees and costs of suit;

(b)    A judgment in favor of Fetch! and against Defendants for substantial actual damages in an amount to be determined through discovery, plus accruing interest and attorneys' fees as allowed by contract and law;

(c)    A judgment in favor of Fetch! and against Defendants for the compensatory monetary damages they have caused by their

trademark infringement, as well as treble damages and attorneys' fees for use of counterfeit marks, under § 35 of the Lanham Act, 15 U.S.C. § 1117(a) and § 1117(b); and

(e) Such other and additional relief as this Court deems just and proper.

Respectfully submitted this 28th day of May, 2025.

By: */s/Stephen W. King*

Stephen W. King (P56456)
**KING & ASSOCIATES, PLLC**
355 S. Old Woodward, Suite 100
Birmingham, Michigan 48009
(248) 792-2398
sking@kingandmurray.com

Christopher C. Conner
(*pro hac vice forthcoming*)
**SAXTON & STUMP, LLC**
4250 Crums Mill Rd. Ste. 201
Harrisburg, PA 17112
(717) 216-5505
cconner@saxtonstump.com

Louis G. Fiorilla
**SAXTON & STUMP, LLC**
280 Granite Run Dr., Ste. 300
Lancaster, Pennsylvania 17601
(717) 556-1067
lgf@saxtonstump.com

*Attorneys for Fetch! Pet Care, Inc.*